All right. Hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and his honorable court. Good morning, counsel. Welcome to the Fifth Circuit. I'm Judge Dennis, and together with Judge Wehner and Judge Duncan, we're your panel today. The first case, which we will call this morning, is United States of America v. I. King Dupre. And with that, Ms. Samantha Kuhn, you're the first to speak, so please proceed. Good morning, your honors. Good morning. Good morning. Am I pleased to court? Just as an initial matter, I was getting a little bit of lag, so please interrupt me if you're having trouble hearing me. I represent I. King Dupre, and I'm from the Federal Public Defender's Office for this appeal. And as the court knows, this appeal is from the denial of a sentence reduction under Section 404 of the First Step Act. And the denial left in place a sentence that is nearly 16 years higher than Mr. Dupre's current guidelines range. It's a much larger discrepancy than has ever existed before in his case, because in every previous sentence reduction proceeding, he had a statutory minimum of 10 years for his drug offense. The First Step Act eliminated that statutory minimum, making his true guidelines range only 41 to 51 months for the drug offense. That means that this court's denial, unlike the previous denials, left in place a sentence that is nearly five times the top of his guidelines range, as opposed to merely twice his guidelines. Now, the court made order, which were discussed in the briefing, and I plan to address each one of those in turn, starting with the most glaring error, which is the reliance on bear arrest records in assessing his criminal history. This court has long recognized that relying on bear arrest records in evaluating criminal history and making a sentencing determination is improper. And the reason for that is that bear arrests are inherently unreliable and are not considered reliable evidence of guilt, and it doesn't rise to the level of the preponderance of an evidence of the evidence standard that's required for sentencing factors. And in this case, the court relied heavily on Mr Dupree's criminal history to deny him relief, but two thirds of that criminal history that it cited were bear arrests. Well, Miss Coon, good morning. So I'm looking at the order denying the reduction in sentence, and I do see what I do see the bear arrests in the third category of offenses that the court referred to. In the first, I see three juvenile offenses that involve firearms, concealed weapon, aggravated assault. I see three adult offenses, possessing a firearm, resisting an officer, a flight from an officer. And then below the arrest records, the bear arrests, I see post conviction behavior, including 18 times engaging in sexual acts, possessing a dangerous weapon, et cetera, et cetera, et cetera. So if let's assume we're reviewing this for abuse of discretion, which is, I guess you agree that's the standard review if you preserved your error. Yes, except for there was no formal preservation here because there was no opportunity to object. I understand. Let's assume abuse of discretion. Why couldn't we say, well, sure, he mentioned the bear arrest of records, but given all the other offenses, the court didn't abuse discretion in refusing a reduction. I think the reliance, as far as the abuse of discretion goes, the reliance or the consideration of bear arrest alone creates error. I think the question, your question perhaps is more targeted to the harmlessness analysis, which is the government's burden of proof that basically this court needs to be certain the same result would have been the outcome. And I think for that question, it's important to look at this court's previous decisions in both windlass and in Foley because in windlass, the court found error where the district court expressly referenced the arrest when it was explaining its sentencing decision. And it said that the court or this court found the error wasn't harmless because the defendant's criminal history appeared quite different when it's improperly considered arrests were ignored. And in this case, while he does have prior convictions that are properly considered, and he does have disciplinary record that is allowed to be considered as well. If you look at the arrest, that is both the largest number of, I guess, elements of the criminal history that the court assessed as extensive. And it's also, with the exception of one of the juvenile convictions, it contains the most serious allegations and the primary allegations of any kind of violent conduct. And so the court's characterization of the criminal history, although there are other elements of his history that it could look at and make an assessment, it's clear that if you remove those arrests, there's a different picture that is drawn of this particular defendant. And I think for the Foley case as well, in that case, there were other considerations that the court announced when it was making its revocation decision. It wasn't exclusively relying on the bear arrest, but the court found that it was a So I think that's kind of where the best answer to your question is as far as why this court can't find the error harmless in this scenario, because they were treated all the same. And another case that's out of circuit is the Mitchell case in the Third Circuit. In that case, the court actually found plain error when the district court relied on the extensive criminal history, but drew no distinction between convictions and arrests. And that's exactly the scenario that we have here. The court basically lumped everything from the PSR that was under criminal history section together, even though the vast majority of it were bear arrests with no information, no factual circumstances. And a few of those were actually, in fact, refused or no crossed. Does that answer your question, Judge? Yes, thank you. So in discussing Foley, I guess that kind of leads me into another point about why it's important to find that this is error in section 404 context. I know in the government's briefing, it doesn't necessarily seem to disagree that this might be error. It doesn't seem to take an affirmative position on that. It just focuses on trying to impose this plain error standard that doesn't apply for the reasons I previously discussed. But if you look at the way the court has applied the rule before and the reason for the rule, it's clear that it needs to apply in the section 404 context as well. First of all, as I said, in Foley, this court applied it to a revocation proceeding. And that made sense because the whole purpose of it is to protect due process. And because courts recognize that bear arrests alone aren't reliable evidence of guilt of criminal conduct, and they don't meet that preponderance of the evidence standard. And so this court has already applied it to other sentencing contexts that aren't the original sentencing following a conviction. But also, if we look at this court's ruling in Hedgewood and how this court has interpreted section 404 specifically, it's clear that this is to be treated as if it is a traditional original sentencing proceeding. And I understand, you know, obviously Hedgewood held that you don't update the guidelines with non-retroactive legal changes. But the court did hold that it's considered imposing a sentence as opposed to reducing one or modifying one because all of the conditions of the original sentencing are kept in place. And it's just that single legal change that applies. And so under that precedent in Hedgewood, it wouldn't make sense to then say, but the court can then go outside the scope of what it's allowed to consider in a traditional sentencing and look at any evidence that it feels, you know, that it basically makes it inclined to deny relief. The other problem that's, you know, kind of a broader policy issue is that if this were allowed in this context, and if we were to say, well, even though we typically find bear arrests to be unreliable evidence it's, you know, the court can rely on it if they want to deny relief, that would basically open the door for district courts to rely on any information, no matter how unreliable or how speculative in denying reductions under section 404, excuse me. And that's clearly not what Congress intended with section 404. It was intended to provide this avenue for resentencing when people were sentenced under a discriminatory framework that Congress has since corrected. And Congress itself said that it would be an opportunity to impose a reduced sentence as if the previous or the new statutory regime were in place. And so to suggest that that should allow, or that should not require courts to stay within the confines of what's considered reliable evidence in making that decision would conflict with both Hedgewood and with the statutory language and purpose. So for the reasons I discussed before, you know, this area isn't harmless here. The court made it very clear and the government acknowledges in its briefing that the court focused on Mr. Dupree's criminal history in making this ruling. I just don't understand that. As I said earlier, I'm looking at the order and to say he focused on the bear arrests is, I don't understand the basis for that. He lists juvenile offenses, he lists adult offenses, he lists then what you're calling the bear arrests, and then he lists a large number of prison infractions. So how can I look at that and say the court focused on the bear arrests over and above anything else? So the focus is on the criminal history itself. And the cases I cited before talk about how when criminal history is reviewed and assessed in consideration of bear arrest records, that's what creates the error. Yeah, I understand that. But there's more than just the bear arrests in this criminal history. Right. And that was the case in the other cases as well. There were previous convictions in the person's record. There were arrests that had, you know, more factual circumstances. But the court has found that when the bear arrests are factored into that analysis, that's what creates the error. I understand that. But we're also talking about whether it's harmful, right? So how can I look at this and say, well, okay, he looked at bear arrests, but there's a lot more. So the bear arrests, it's harmless error. Why can't we say that? I think the important thing is that the analysis is harmlessness. And the court has to find that it is absolutely certain that the district court would have reached the same conclusion without these bear arrests being considered. And I think the important distinction to make is that this court's responsibility isn't to look at it and say, well, you know, looking at this record, even if I took them out, maybe I would still deny him relief on the merits on this issue. The question is what the district court did. And here, the district court clearly factored that into its analysis. And that's what the problem is. And that's why this court can't be certain it would have reached the same conclusion, especially given the extreme discrepancy between the guidelines range and Mr. Dupree's current sentence, and especially given that the most serious allegations and the most violent and serious crimes that are alleged in there are the bear arrests. It's both the majority of the criminal history, and it's also the most crimes. And it's really the evidence that supports this conclusion that the court reached that, you know, his entire criminal history reports a propensity for violence. Those are based heavily, if not exclusively, on this series of arrests that occurred that don't have any factual information or history. So with the court's permission, I'd like to use my remaining time to move on to the other errors. In this case, the other errors are, I guess, considered procedural and in the category. And it's the failure to consider the 3553A factors and also the failure to adequately explain its sentencing decision. With respect to the 3553A factors, there's currently a circuit split over whether courts are required to consider those factors in these proceedings or whether they're just simply permitted to do so. As far as I can tell, four circuits have affirmatively held that courts are required to consider all of those factors in these proceedings. That's the Third, Fourth, Sixth, and D.C. circuits. And only two have held that while permitted, courts don't have to consider all of them in denying relief. And the current majority of appellate courts is correct on this issue. And this court should now join them in holding the 3553A considerations mandatory in Section 404 proceedings. And that's for a number of reasons, the first being the plain language and purpose of Section 404. Section 404 was intended to rectify disproportionate and racially disparate sentencing penalties and provide an avenue for resentencing for people who are unfairly sentenced under the previous regime. And the use of the word impose as multiple circuits have recognized to both refer to the original sentencing and also to the resentencing under Section 404 shows that Congress envisioned this to basically be an opportunity for a redo of the original sentencing with the new statutory regime in place. And that was also recognized by the Sentencing Commission, which is cited in the Chamber's decision, the Fourth Circuit decision. They cited guidance from the Sentencing Commission that recognized that the traditional Section 3553A factors should remain applicable in Section 404 because the Congress didn't indicate that there should be any kind of different analysis under this sentencing proceeding. And that interpretation is also supported by this court's ruling in Hedgewood. Again, this court has already said what the mechanics are for these proceedings and has basically said that the court places itself in the time frame of the original proceeding and proceeds as if the new statutory framework in place. It would conflict with that precedent in Hedgewood to say that even though the court is supposed to basically replace the previous sentencing proceeding, they don't have to consider traditional sentencing factors in making a decision about what is sufficient but not greater than necessary to punish the person for the offense. And also the purposes of 3553A itself highlight why this is necessary. The whole purpose of that statute is to ensure consistency and fairness in sentencing and make sure sentences aren't unnecessarily long. And so that's no less applicable here. In fact, it's more important in Section 404 proceedings than in maybe any other sentence modification proceeding that it might apply. Because here, as we talked about, this is supposed to be a replacement and provide a remedy for people who were previously sentenced under an unfair and discriminatory regime. And so in this setting, when this is a one-chance opportunity for people to be resentenced with the benefit of Congress's correction of that regime, it would make little sense to say that the courts don't have to go through the traditional assessment of the I think the most glaring omissions here is the court's failure to consider the guidelines or any of Mr. Dupree's mitigating arguments that relate to the 3553A factors in making its decision. It's clear the court didn't mention the 3553A factors or consider them at all or consider his arguments on the merits. And I see that my time has expired, so I'll reserve the for rebuttal. Thank you. Dennis. Okay. Mr. Boydman. Thank you. Good morning, Your Honors. May it please the court. Hiking Dupree filed a motion for a sentence reduction under Section 404. His lawyer wrote a detailed memorandum explaining the 3553A factors, explaining his rehabilitative efforts, and explaining why he thought he was entitled to a reduction. The district court disagreed, and for the fourth time in the history of this case, denied relief. And denied relief basically for the same reasons. And it's reasons, Judge Duncan, that you brought up in the order. It's effectively his criminal history, his extensive criminal history, which the court at the original sentence sentencing called horrible, found that Mr. Dupree had no respect for the law and that he had not benefited from leniency. I get that, but do you, I don't know, does the government concede that the quote-unquote bear arrests shouldn't factor into the decision whether to grant a reduction? No, Your Honor, we're not conceding that and we're not conceding it for a few reasons. One is that this court has never said that that cannot be a consideration in either this context or in the 3582C2 context. In fact, I think the Salazar case that we cited in our brief says that the courts never addressed that. Now, the cases that Mishkun is talking about, I understand that. A revocation sentence and an original sentencing hearing. Those are two different proceedings than what we have here. In both of those proceedings, someone still has their liberty in place. They are being removed from freedom into confinement. And so that's a little bit of a different situation in the rights of protection there. What you have here is the in custody subject to a final legal sentence and are seeking a reduction out of a legislative ability to allow them to do that. So I don't think it's mandatory that they cannot require it. I'll also say that, now I will say the benefit of a bear arrest is probably limited. I can't, I'm sure it's not as strong as anything else, but I think that just goes into the calculation of what this court would consider when it looks at everything to decide if a, if it has a firm conviction that a mistake was made. But I also think that the problem, if we decide you shouldn't have relied on the bear arrest, is that it? No, I think, I think if you find that's error, I don't think it's mandatory reversal as opposing counsel is suggesting. I don't think in this context or in the 3582 context, the court has said that. What's your response to counsel's argument that there's no way we can know to what extent the bear arrest factored into the decision? Sure. Well, I think you can look at that by looking to one, the order itself, and then two, to the history of the case. Remembering, of course, that this district judge was a district judge that handled the case from the beginning. And first, as you pointed out, of course, Judge Duncan, the order is replete with why the district court didn't want to do it outside of the bear arrest. Three, an extensive criminal history going back to the age of 13, I believe, three juvenile convictions, some of which included firearms and drugs, aggravated assault, adult convictions, which included firearms and drugs, this conviction in this case, which had a firearm and a drug, and then the very bad history in prison, multiple reductions. And it was the extensive criminal history and the failure to confine himself to prison rules, which is why the district court said in two other reduction denials of 3582 C2. So if you take the bear arrest completely out of the picture, there's still more than enough here to find that the court did not abuse its discretion in denying relief. And I think that's legitimate when you look at the amount of discretion that a district court has in these cases. Excuse me. The discretion is very wide. And while I understand argument that the First Step Act and the Fair Sentencing Act are supposed to be ameliorative and give defendants the opportunity to be resentenced. That's all it does. It gives them an opportunity. It is not required. Congress specifically said nothing in Section 404 will be construed to require a court to reduce any sentence. Are you aware of any circuit case that has found a district court abused his discretion and not granting a reduction under 404 within this circuit, your honor? Well, within this circuit, in this circuit, I'm not aware of any case in which in which this court has found a discretionary call abuses discretion. I don't want to, you know, I'll honestly admit if something's come up, I've missed it, but I have not seen that. I have seen cases where the district court has kicked it back for more information. In fact, I think the Jackson case and Robinson, I think the court did that. Or if I may be wrong in Robinson, it may have been winners or white Robinson. We affirmed right. That's correct. I think it may have been the recent case of Whitehead and Jackson, but I'm not aware of this court finding abuse of discretion on a discretionary call. And I think that speaks to the wide discretion, not only that this court gives a trial court, but that section 404 itself gives a trial court. Let me let me ask this. Courts sentencing courts are not permitted to consider their arrest records during the initial sentencing. Is it your position that they should be able to consider their arrest under section 404? I think they can, Your Honor. And I say that in the guise of I don't think there should be a rule that's categorically says no. And but I do admit they're probably worth less weight. And the reason I'm saying there should not be a categorical no to it is because of the express discretion given from Congress. And the minute you put more and more rules of what the court can't do, the minute you start presuming that the new guideline is substantively reasonable, something this case this court has already said you're not going to worry about, or the minute you start putting a rule that suggests a presumption of the current sentence is unfair. We're starting to impinge on the discretion of the court, and we're starting to provide an exception clause into section 404 C. And it's just not what Congress said. Congress gave a lot of discretion here in its explicit words saying nothing shall be construed. Now, that's not to say there could be a time when this court feels that because of the reliance on a bear arrest became so prevalent that this court is left with a firm conviction that a mistake has been made. So I'm certainly not saying this court can't take that into consideration. But I would be hesitant for the court to put some type of rule that says that cannot be considered at all. I'm certainly not saying that discretion is limitless. I don't think the district court could, for example, consider an unconstitutional motive such as race, religion, or sex. But I don't think a categorical rule that says bear arrest automatically reverse, which is what opposing counsel is suggesting. I don't think that rule is appropriate in this section, especially when you're giving that answer. Are you drawing a distinction between the kind of quote unquote resentencing we have in a 404 versus original sentencing or revocation hearing? Yes, your honor. I am. What's your best authority for that? That there's a meaningful my best. Sure. My best authority would actually be the cases that you have already. Hegwood, Jackson and Baptiste. I realize Hegwood does say the word impose. Um, so I'm not taking issue with that. But I am saying if you look at Hegwood entirely, Hegwood also said it's not a plenary resentencing. We're not under those rules. In fact, Hegwood finds that the principles behind 3582 C2 and section 404 actually kind of work together. And it didn't. I think the words is it didn't see any problem using those procedures. And if we look to Baptiste, which Baptiste says this court is not going to engage in a substantive reasonableness review of the sentence that is left in place after denial, think either even further suggests that it's not the same as an original sentencing. And so when we look at that, we are looking at something closer to 3582 C2 than an original sentencing. And it makes sense because as we point out, I'm not even I won't quibble with the word whether this is a resentencing proceeding, but no resentencing occurred here. This was not the district court imposing a new sentence. It did not reimpose the original sentence. It chose to deny relief and leave the otherwise final legal constitutional sentence in place. And it gave reasons for doing so. And those reasons are the extensive criminal history and a constant violation of prison rules that shows that Mr. Dupree is having a problem following rules and maintaining order. And that kind of leads into what that means. Now, opposing counsel has said the district court did not consider the 3553A factors or its argument and the extent of what she calls the new variants, I believe. But first of all, the district court here denied relief two times, one in a form order in which it certified that it did consider the 3553A arguments and that it did consider Mr. Dupree's motion. And if that wasn't enough, it gave the five page order listing all the reasons that Judge Duncan that you pointed out as well. And those those reasons reflect the nature and character of the offense, the history and character of the defendant. They reflect the seriousness for the law, talk about the respect for the law and the need for just punishment and protect the public. Even if the court did not say this, this court has always found that it could implicitly found the court did consider that and that's Evans and Caulfield talk about that. There's nothing different here. And as far as the new guideline being so far removed from the final sentence, again, this is not the imposition of a new sentence. There is no presumption that Congress created that the original sentence is unfair or unconstitutional. If it did, it would have mandated or could have at least mandated that reductions take place here. It said, no, nothing shall be required to reduce a sentence. Concluding with that, this is simply not an outlier case. The district court here acted within the discretion Congress gave it in 404 C. Its reasonings were consistent, consistent with those in Jackson, Batiste and Robinson. And if there's any question about whether the court considered it in light of Evans and Caulfield, this court can imply can implicitly find that the court considered the 35 53 a factors and Mr. Dupree's motion. Mr. Dupree had his day in court. As it said in Jackson, the court chose not to reduce for specific reasons, and those reasons were specific and individualized to Mr. Dupree. The procedures here were blameless, and there was no abuse of discretion. Unless there are any other questions, we'll submit on our briefs, and we would ask the court to affirm. Thank you, Your Honor. Thank you, sir. Yes, sir. Again, you have five minutes on the phone. Yes, thank you. I would disagree with the government's characterization of this case as not being an outlier. First of all, as we talked about before this, the denial of a sentence reduction here left in place an extreme sentence, a 20 year sentence for a single drug offense that carries a guidelines range of 41 to 51 months. And if I know that the government focused on, you know, the court, the court or sorry, the government even said that the court relied on a lot of its same reasoning from the previous denials of sentence reductions in this case, which is true. It reiterated criminal history characterizations from the original sentencing, and it reiterated its reliance on disciplinary records from previous reductions. But I think the important thing to remember here is that the circumstances we have in this case are much different than the previous circumstances. And the Supreme Court has said that when you look at the adequacy of an explanation or an adequacy of consideration by a district court, you have to look at the specific circumstances that case and more or less can be required, depending on the previous reduction, the result of the court's denial left in place a sentence that was it was high, it was twice the guidelines range, but it was only a few years more severe, I guess, than the variance imposed at the original sentencing. And the one that we have here is much more extreme than that. And so more is required in that kind of circumstance. Just revisiting briefly the bear arrest record, I think the standard is getting a little bit muddled. You know, the harmlessness standard is the government's burden of proof. And it's not just a standard where you look at, well, you know, is there evidence in the record that supports a denial in this case? That's not the inquiry. The inquiry is, can you be absolutely certain and point to specific record evidence, proving that the court would have done the same thing if it had relied or if it realized that it could not rely on these bear arrests to make its decision. And that that evidence isn't here. And the government hasn't been able to point to any evidence. I'm just curious, what's the best case or cases in our circuit that that's the right formulation of the harmlessness standard in this context? I think the best would probably be Foley. Foley was the case where, like I said before, the court looked at the reasoning that the judge gave, and there were multiple, you know, statements, I guess, made by the judge in making his decision. But it found that a dominant factor was the criminal history. And so because this was such a big factor in that criminal history analysis, that's what, you know, I think the best case that supports the harmless, non-harmlessness finding, in addition to the other case, I apologize, it's escaping me at the moment, the Windlass case. And so shifting from the bear arrest issue, just briefly, I know the government re-raised, you know, the argument they've made in their briefing, which is saying, well, this court can just infer that the court did its job, consider all the arguments, considered all of the 3553A factors in making its decision. But this court has rejected similar arguments like that in the 3582C2 context. And I think the most notable cases are Henderson and Larry for that point. Because in Larry, the court actually rejected the suggestion that it could basically just infer consideration because the court had all the arguments before it, that the information was available, and surely it could have considered them. Similarly, in Henderson, I believe in that case, the court looked to the lack of acknowledgement of the defendants mitigating arguments in his briefing to say that there was no evidence that the court actually gave due consideration to all of that information. I apologize. And finally, I think a couple of last points to make. I know the government has compared this somewhat to Batiste and Robinson and other affirmances by this court. But I think it's important to remember that those cases were very different than the circumstances we have here. In both Batiste and Robinson, the court's denial resulted in basically a sentence that remained an unchanged guidelines range. There was no shift from the previous guidelines. Hedgewood kept career offender enhancement in place, and the denial just kept a bottom of the guidelines in Mr. Batiste's case sentence in place. But also in both of those cases, the court explicitly acknowledged the mitigating arguments that were made by the defendants, and it acknowledged the 3553A factors, or at least considerations related to the defendant's arguments. Here, Mr. Dupree presented a lot of new mitigating information in his motion, and the court didn't acknowledge it at all. It simply relied on its previous reasoning. And I think if the court looks at the Smith case in the Sixth Circuit and the White case in the D.C. Circuit, those are kind of representative of the type of error here. And I believe my time is up, so unless the court has any other questions, I'll rest on that. Thank you. Thank you. Case will be submitted. And we'll go to the next case.